UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MELISSA MORRIS,

                Plaintiff,

        -against-                **MEMORANDUM AND ORDER**
                                          16-cv-1306 (DLI)
I.C. SYSTEM, INC.,

                Defendant.
----------------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

This matter is before the Court on Defendant I.C. System, Inc.'s ("ICS") Motion for Summary Judgment. (Docket Entry No. 21). Plaintiff Melissa Morris ("Plaintiff") filed this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against ICS for alleged violations in connection with ICS's efforts to collect a debt. For the reasons set forth below, the Court finds that Plaintiff lacks standing to bring her claims and this action must be dismissed.

**I.    BACKGROUND[1]**

Plaintiff Melissa Morris is 31 years old and resides in Far Rockaway, New York. She has a history of employment in several companies involved in credit repair and debt disputes on behalf of consumers. In February 2010, Plaintiff opened a personal account for electrical service with utility provider Con Edison, which is the underlying debt in this litigation. In October 2015, Ms. Morris closed the account after relocating to an address that was not serviced by Con Edison. Her final outstanding balance in October 2015 was approximately $1,055. On or about December 30, 2015, Con Edison assigned Ms. Morris's account to Defendant ICS for collection.

---

[1]     Except where otherwise stated, the Background is taken from facts that are not genuinely in dispute.

On or about December 31, 2015, ICS sent Ms. Morris a letter concerning her account with Con Edison (the "Collection Letter"). (Ex A to Selbitschka Aff. (Docket Entry No. 21-6)). The Collection Letter informed Ms. Morris that her "delinquent account ha[d] been turned over to this collection agency." (*Id.*) It instructed her to "tear off the bottom portion of this letter and return it with [her] payment," and invited her to call ICS to discuss payment terms. (*Id.*) The bottom portion of the Collection Letter listed three options for payment: online at www.makeyourpayment.com, by mail via check or money order, or by phone.

On or about January 7, 2016, Plaintiff contacted ICS by telephone and advised ICS that she planned to contact Con Edison directly about her outstanding bill and was not going to make any payment to ICS. (Ex. F to Montoya Decl., Morris Dep. Tr. at 88:2-6, 89:16-24 (Docket Entry No. 21-4)). Plaintiff never inquired about ICS's payment options or attempted to pay ICS. After this call, there were no other oral or written communications between ICS and Plaintiff prior to this litigation. (*Id.* at 89:25-90:3).

After her call with the ICS representative, Plaintiff called Con Edison "right away," also on January 7, 2016. (*Id.* at 90:13). She told a representative of Con Edison that she intended to pay the full balance of her account directly with Con Edison once she received her next paycheck. (*Id.* at 96:20-98:2).

On or about January 28, 2016, three weeks after her telephone conversations with Con Edison and ICS, Plaintiff accessed the ICS website www.makeyourpayment.com, which was listed in the Collection Letter as one of the three payment options. She testified that she visited the website out of "curiosity," "speculation," and for "informational purposes," with no intention of using the website to pay the outstanding debt. (*Id.* at 100:7-11, 105:6-18, 113:22-114:5). Upon accessing the website, Plaintiff entered the reference number provided in the Collection Letter,

2

which generated her name and the amount owed. The screen also displayed a "Pay N Seconds™ Credit Card Processing Fee" in the amount of $58.90 that would be charged for online payments. Plaintiff did not enter any more information or proceed any further.

On February 5, 2016, Plaintiff filed her original complaint in this action in the New York City Civil Court for Queens County. (*See* Ex. A to Def.'s Notice of Removal (Docket Entry No. 1)). Plaintiff brought claims under Sections 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1) of the FDCPA. (*Id.*) Plaintiff argues, in sum, that ICS violated the FDCPA because the Collection Letter directed Plaintiff to a website that charges a processing fee for credit card payments. On March 16, 2016, ICS timely removed the action to this Court.

On January 18, 2018, ICS filed its fully briefed Motion for Summary Judgment. ICS argues that Plaintiff does not have standing to bring her claim because at no point did she try to pay ICS and only discovered the processing fee when she accessed the website "for informational purposes" after making arrangements to pay her debt with Con Edison directly. ICS further argues that, as a matter of law, the processing fee does not violate the FDCPA because it is optional and is charged and wholly administered by a third party.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might

affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citations omitted). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-533 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of

4

fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

### III.   DISCUSSION

#### A.   The FDCPA

Because the instant motion and the Court's analysis address Plaintiff's interests under the FDCPA, a brief discussion of the purpose and structure of its statutory scheme is helpful. Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Among other provisions of the statute, the FDCPA broadly provides that a debt collector may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt," *Id.* § 1692e, or "use unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," *Id.* § 1692f.

As a remedy for statutory infractions, the FDCPA permits recovery in individual actions for damages equal to the plaintiff's actual loss or statutory damages of no more than $1,000. *Id.* §§ 1692k(a)(1)–(2)(A). In addition, a successful plaintiff may recover "the costs of the action, together with a reasonable attorney's fees as determined by the court." *Id.* § 1692k(a)(3).

#### B.   Article III Standing

ICS argues that Plaintiff cannot maintain her claims because she lacks Article III standing. *See* U.S. Const. art. III, § 2. To satisfy the "irreducible constitutional minimum" of Article III

standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). ICS argues that Plaintiff fails to satisfy the requirement of injury in fact, the "[f]irst and foremost" of standing's three elements. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998). To demonstrate injury in fact, a plaintiff must show the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan* at 560 (internal quotation marks omitted).

As the Supreme Court recently clarified, injury to a legal interest must be "concrete" as well as "particularized" to satisfy the injury-in-fact element of standing. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) (finding that requirements are distinct and must each be satisfied). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (internal quotation marks omitted) (explaining that "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'").

Plaintiff does not allege that the Collection Letter contains an FDCPA violation on its face. Rather, her position is that her rights under the FDCPA were infringed because the Collection Letter directed her to ICS's website, where ICS attempted to administer an allegedly unlawful fee for online credit card payments.[2] However, the problem with Plaintiff's theory of injury is that she was never charged the fee—*nor was at risk of being charged the fee*—because at no point in time did she seek to transact with ICS. Her testimony is that, upon receiving the Collection Letter, she phoned ICS and told a representative that she was not going to pay her debt through ICS, but would settle the account directly with Con Edison. Immediately following that call, she called

---

[2] For purposes of this motion, the Court assumes, but does not hold, that the processing fee violates the FDCPA.

Con Edison and told a representative that she would pay Con Edison directly upon receiving her next paycheck. Three weeks later, after she made arrangements with Con Edison and resolved not to involve ICS, Plaintiff accessed ICS's website "out of curiosity" and discovered that, had she paid ICS online, she would be subject to a processing fee.[3]

While Plaintiff had a statutory right to be free from the collection or the *attempted* collection of extraneous fees, the undisputed timeline of events shows that there never was an attempt to collect until well after Plaintiff had already determined that she would pay Con Edison directly and not involve ICS. Notably, Plaintiff chose, proactively, not to continue the online payment process once she was aware of the additional processing fee. The purportedly unlawful attempt to charge an excess fee never reached Plaintiff in any meaningful way sufficient to cause injury. The fact that she never intended to engage with ICS at all, only logged onto ICS's website out of "curiosity," and decided not to make the payment online to ICS and incur the fee, is fatal to her case. *See Benali v. AFNI, Inc.*, 2017 WL 39558, at *6 (D.N.J. Jan. 4, 2017) (holding, on a motion for summary judgment, that the plaintiff did not establish a concrete injury because, based on his testimony that he knew the debt was not actually his, there was no risk that plaintiff would have paid the convenience fee); *Tourgeman v. Collins Fin. Servs., Inc.*, 197 F. Supp.3d 1205, 1209 (S.D. Cal. 2016) ("The fact that the plaintiff was completely unaware of the letter until it was discovered in litigation, is fatal to Tourgeman's requirement that he demonstrate he had concrete

---

[3] In connection with her Opposition, Plaintiff submits an affidavit that contradicts her deposition testimony. It states that when accessing the ICS website, she sought "additional information about making a payment," (Pl.'s Aff. ¶ 14, Docket Entry No. 22-2), and that she "chose not to make a payment on [ICS's] website at the time due to [ICS's] attempt to add an additional $58.90 fee to my previous outstanding balance," (*Id.* ¶ 26). This is in direct contradiction to her deposition testimony, in which she states that she decided to pay Con Edison prior to accessing the website. (Pl.'s Dep. Tr. At 88:2-4, 16-20; 89:14-24). "[A] party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987); *see also Palazzo v. Corio,* 232 F.3d 38, 43 (2d Cir. 2000) ("in opposing summary judgment, a party who has testified to a given fact in his deposition cannot create a triable issue merely by submitting his affidavit denying the fact") (citation omitted). Accordingly, the Court affords no weight to Plaintiff's self-serving and contradictory affidavit.

harm resulting from the violation. A risk of harm that could have hypothetically been caused by a letter that was never received is too conjectural to be concrete."). Plaintiff simply has not put forth any evidence to create a dispute of material fact as to whether she maintained an injury in connection with her receipt of the Collection Letter.

Had the Collection Letter contained an FDCPA violation on its face, the outcome here may have been different. *See, e.g.*, *Thomas v. John A. Youderian Jr., LLC*, 232 F. Supp.3d 656, 670-71 (D.N.J. 2017) (finding "barely enough for standing" where the plaintiff allegedly received a collection letter notifying him that a small convenience fee would be charged for payments made by credit card). Had the fee been listed in the Collection Letter (or if the letter had contained a disclosure violation), then the injury to Plaintiff's rights conferred by Congress would have been violated at the outset. However, because Plaintiff was not subjected to, or even aware of, the processing fee until *after* she had decided to disregard ICS entirely, "there was no risk that [Plaintiff] would pay" the processing fee and, therefore, did not suffer injury within the ambit of the FDCPA. *Benali*, 2017 WL 39558, *16.

This holding does not mean that Plaintiff would have had to actually pay an improper fee to have standing. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) (finding that the fact "that plaintiff did not ever pay any attorneys' fees . . . [did] not necessarily suggest that he was not injured for purposes of his FDCPA claim, if he [could] show that [defendant debt collector] *attempted* to collect money in violation of the FDCPA"). Had she been charged an allegedly improper fee at the outset, Plaintiff likely would have had standing to pursue a claim under the FDCPA. *See McLain v. Head Mercantile Co.*, 2017 WL 3710073, at *15 (M.D. La. Aug. 28, 2017) (holding that plaintiff's receipt of a letter listing a "convenience fee" was sufficient to satisfy standing). However, here, where the facts are clear that Plaintiff was never

charged a fee, and her right to be free from an attempted fee was never at risk, the circumstances are too attenuated to confer standing.

## IV. CONCLUSION

Plaintiff's alleged injury is "conjectural [and] hypothetical." *See Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "[A]t [the] uncontroverted core [of the 'case or controversy' requirement] lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Russman v. Bd. of Educ.*, 260 F.3d 114, 118 (2d Cir. 2001). Accordingly, because Plaintiff's claimed harm is not "concrete and particularized," but instead is "conjectural or hypothetical," Plaintiff has not alleged an injury-in-fact, and thus, does not have standing. Therefore, ICS's Motion for Summary Judgment is granted, and this action is dismissed with prejudice.

SO ORDERED.

Dated: Brooklyn, New York  
      September 30, 2018

/s/  
DORA L. IRIZARRY  
Chief Judge